UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GILBERTO ZAMBRANO, d/b/a, TASKMASTERS<br><br>Plaintiff,<br><br>v.<br><br>SPARKPLUG CAPITAL, LLC and RED DOT MANAGEMENT, LLC,<br><br>Defendants. | Case No. 19 CV 100<br><br>Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gilberto Zambrano, d/b/a Taskmasters, filed this lawsuit against Defendants Sparkplug Capital, LLC and Red Dot Management, LLC alleging that Defendants breached two contracts with Zambrano for snow and ice management ("SIM") and lawn and grounds management ("LGM") services at Defendants' self-storage facilities. [29].[1] Presently before the court are the parties' *Daubert* motions seeking to exclude the other side's expert. [175]; [176]. For the reasons that follow, both motions are denied.

**BACKGROUND**

Zambrano has retained Jason Schwebke as an expert witness to opine on Zambrano's damages resulting from the allegedly premature termination of Zambrano's SIM and LGM contracts. At the time he issued his reports, Schwebke was a Ph.D. candidate at the University of Central Florida studying accounting, with a bachelor's degree in finance and a master's degree in accounting. [175-2] at 3. Schwebke relies upon Zambrano's historical expenses, revenues, and profit margins associated with the services Zambrano provided to Defendants prior to the termination of the contracts to project what those figures would be if the contracts had not been terminated—ultimately arriving at Zambrano's projected net profit. *Id.* at 6–10, 34–39.

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph numbers. Page numbers refer to the CM/ECF page number.

Defendants retained Jon Ahern to rebut Schwebke's analysis. Ahern is a certified public accountant and Senior Director in the Denver office of Alvarez & Marsal Disputes and Investigations, LLC. [184-1] ¶¶ 1–2. Ahern walks through Schwebke's report, critiquing Schwebke's analysis and conclusions. For example, Ahern faults Schwebke for allegedly overestimating the number of times Zambrano would have provided SIM services to Red Dot—resulting in Schwebke reaching an inflated projected revenue total. [184] ¶¶ 36–41. Altogether, Ahern concludes that Schwebke's projected net profits for Zambrano are greatly exaggerated.

## LEGAL STANDARDS

"Federal Rule of Evidence 702 and *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993),] govern the admissibility of expert testimony." *Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019). "Under this framework, a trial judge, as a gatekeeping matter, is responsible for ensuring that proposed expert testimony 'is not only relevant, but reliable.'" *Id.* (quoting *Daubert*, 509 U.S. at 589).

The court "must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 780 (7th Cir. 2017) (internal quotation marks omitted). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## DISCUSSION

### I. Defendants' Motion To Exclude Schwebke

Defendants challenge Schwebke's qualifications and the reliability of his opinions. Each issue is addressed in turn.

#### A. Qualifications

Defendants first argue that Schwebke is unqualified to offer opinions regarding lost profits damages. Defendants assert that Schwebke is a college student, has never testified as an expert before, and the focus of his education and training is tax. Defendants also argue that Schwebke has no knowledge, experience, or education related to SIM or LGM services.

"For a witness to be considered an 'expert,' Rule 702 requires that person to be qualified as such 'by knowledge, skill, experience, training, or education.'" *Lewis*, 561 F.3d at 705 (quoting Fed. R. Evid. 702). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has

superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (internal quotation marks omitted).

Schwebke is sufficiently qualified to offer the opinions in his reports. Schwebke has a bachelor's degree in finance, a master's degree in accounting, and had completed his Ph.D. coursework in accounting at the time he authored his expert reports.[2] [175-2] at 3 & n.1. Schwebke has taught accounting and served as a lecturer on cash flow analysis. *Id.* at 3. In his report, Schwebke estimates revenue Zambrano would have earned under the contracts at issue, the costs Zambrano would have incurred, and the net profit Zambrano would have made. Schwebke does so primarily by using Zambrano's historical costs, expenses, and profit margins from before the contracts were terminated and extrapolating projected future figures from that data. *Id.* at 6–8, 35–39.

Defendants' arguments against Schwebke's qualifications are unpersuasive. Although Schwebke appears to have specialized in tax issues, that does not somehow nullify his expertise in general financial matters or accounting, and he need not have expertise specifically in profit projection, expense reconstruction, SIM, or LGM services to opine on Zambrano's projected profits. *See Hall v. Flannery*, 840 F.3d 922, 929 (7th Cir. 2016) ("[O]rdinarily, courts impose no requirement that an expert be a specialist in a given field." (internal quotation marks omitted)); *United States v. Long Grove Manor, Inc.*, 315 F. Supp. 3d 1107, 1111–12 (N.D. Ill. 2018) (rejecting contention that "only an expert in Medicare administration can perform scientifically valid statistical analysis of data relating to the provision of services to Medicare beneficiaries"); *Cazares v. Frugoli*, No. 13 C 5626, 2017 WL 1196978, at *6–7 (N.D. Ill. Mar. 31, 2017) (expert was qualified to "perform[] relatively basic statistical tests" even though she lacked expertise to offer qualitative opinions regarding the same subject matter). And, unsurprisingly, neither Rule 702 nor *Daubert* requires that an expert serve as an expert witness in a prior case before being qualified to testify as an expert. *Harris v. City of Chicago*, No. 14-CV-4391, 2017 WL 2080353, at * n.1 (N.D. Ill. May 15, 2017) ("'[T]here is a first time in court for every expert' and Dr. Stevens need not be 'a professional witness' to be qualified as an expert witness." (quoting *United States v. Parra*, 402 F.3d 752, 758–59 (7th Cir. 2005)).

---

[2] Since then, Schwebke received his Ph.D. and is now a visiting assistant professor teaching accounting at Texas Tech University in the Rawls College of Business. *Jason Schwebke, Ph.D.*, Texas Tech University, https://www.depts.ttu.edu/rawlsbusiness/people/faculty/accounting/jason-schwebke/index.php (last accessed July 8, 2022).

B.   Reliability

Defendants next argue that Schwebke's opinions are unreliable.  Defendants contend that Schwebke (1) did not determine whether Zambrano could have scaled his business to service dozens of additional facilities added by Red Dot; (2) did not account for Zambrano's costs for scaling up to service those additional locations and unreasonably assumed that Zambrano could do so by incurring minimal costs through subcontracting out the work for the added locations; (3) overstated the expected SIM revenue by assuming that SIM services would be provided whenever there was at least 0.1 inch of snowfall and by relying on snowfall data from National Oceanic and Atmospheric Administration weather stations that may not be at the same locations as Red Dot facilities; (4) failed to account for the, on average, smaller size of the Red Dot facilities added after the contracts were terminated; and (5) improperly included in the historical costs instances where Zambrano provided services before the contracts were entered into that were on different terms.

To assess reliability, the court must "determine whether the expert is qualified in the relevant field and . . . examine the methodology the expert has used in reaching his conclusions." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).  Reliability is "assessed case by case," although the non-exhaustive list of factors identified in *Daubert* and its progeny can be instructive.[3]  *Timm*, 932 F.3d at 993.  "Rule 702's reliability elements require the district judge to determine only that the expert is providing testimony that is based on a correct application of a reliable methodology and that the expert considered sufficient data to employ the methodology." *Gopalratnam*, 877 F.3d at 780 (emphasis omitted).  "[T]he correct inquiry focuses not on 'the ultimate correctness of the expert's conclusions,' but rather on 'the soundness and care with which the expert arrived at her opinion.'" *Timm*, 932 F.3d at 993 (quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)).  Ultimately, to be reliable, an expert must "show that his conclusions were the fruit of a rigorous, objectively-verifiable approach—something more than mere speculation." *Id.* at 994.

Defendants' objections challenge the factual underpinnings of Schwebke's analysis and the correctness of his conclusions.  These challenges go to weight, not admissibility.  Schwebke addressed the issues raised by Defendants in either his report or his deposition testimony and explained his reasoning.  Defendants' contention that Schwebke is incorrect on the facts or reached an incorrect

---

[3] These factors include, for example, "(1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community." *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017) (quoting *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 844 (7th Cir. 2017)).

conclusion is not a basis for exclusion of his opinions. *See Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 806 (7th Cir. 2013) ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." (internal quotation marks omitted)); *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586–87 (7th Cir. 2000) (medical expert's reliance on patient's allegedly inaccurate history not a basis for exclusion, as "[t]he accuracy and truthfulness of the . . . history is subject to meaningful exploration on cross-examination" (internal quotation marks omitted)).

Defendants also argue that Schwebke's opinions are unreliable because he did not review certain documents (such as Zambrano's tax returns), allegedly failed to verify that some of the expense documents he did review were accurate, and did not account for Zambrano's mitigation of damages. These arguments too go to the weight Schwebke's opinions should be given, not their admissibility. Schwebke provided a reasonable basis to estimate Zambrano's expenses by using Zambrano's credit card statements and ledger entries. Whether Schwebke should have reviewed additional documents or considered Zambrano's mitigation of damages does not impact his opinions' admissibility. *See Africano v. Atrium Med. Corp.*, No. 17-cv-7238, 2021 WL 4264237, at *4 (N.D. Ill. Sept. 20, 2021) ("[O]bjections that [an] expert[] failed to consider facts (or that [he] placed too great an emphasis on certain facts over others) generally go to the weight of the expert's opinion, not its admissibility." (internal quotation marks omitted)); *Wilda v. JLG Indus., Inc.*, No. 16-cv-10088, 2021 WL 392705, at *3 (N.D. Ill. Feb. 3, 2021) ("[A] failure to look at this or that is not a reason to keep an expert out of a case, unless the materials that an expert reviewed are insufficient without it."). The record also shows that Schwebke did take steps to verify the accuracy of the documents he reviewed, [175-3] at 28, 33, and whether he could or should have done more can be explored by Defendants on cross-examination.

Defendants also raise a number of new arguments for the first time in their reply brief, including that Schwebke's testimony should be excluded under Federal Rule of Evidence 403. By failing to raise this argument (and others) in Defendants' initial motion, these arguments are waived. *See Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 14 CV 3618, 2016 WL 307310, at *1 n.1 (N.D. Ill. Jan. 26, 2016); *Niedermaier v. Warren Rosen & Co., Inc.*, No. 10 C 0092, 2012 WL 1142742, at *2 (N.D. Ill. Mar. 14, 2012).

## II. Zambrano's Motion To Exclude Ahern

Zambrano raises a host of various challenges to the admissibility of Defendants' expert Ahern. First, Zambrano contends that Ahern offers a number of opinions that Zambrano contends are categorically impermissible—opinions that either parrot what a witness told Ahern, address the credibility of witnesses, or attempt to resolve disputed factual issues.

Zambrano's arguments are unpersuasive. "An expert witness is not permitted to parrot what some lay person has told him and testify that he believes the person was being truthful," *Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 461 (7th Cir. 2014), and Ahern does not do so here. In some instances Zambrano relies upon facts learned from another witness, but an expert is permitted to do so as long as those facts inform or are a part of Zambrano's analysis. *E.g.*, [184-1] ¶¶ 67–77 (relying upon statements from Red Dot employees about Zambrano's performance servicing then-existing Red Dot facilities to conclude that Zambrano's expenses likely would have increased if he attempted to service the facilities Red Dot later added); *see In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992) (architect could not "vouch[] for the truth of what [an] engineer had told him" but "could use [that] to offer an opinion within the architect's domain of expertise"). Next, Ahern does not opine on whether Schwebke is "being truthful" in the sense that Ahern does not opine on whether Schwebke is being honest or dishonest—instead, Ahern challenges the merits of Schwebke's analysis and conclusions, which is entirely proper. *Goldberg*, 755 F.3d at 461; *cf. Allen v. Am. Cyanamid*, No. 11-VC-0055, 2021 WL 1086245, at *9 (E.D. Wis. Mar. 22, 2021) (denying *Daubert* motion against expert that challenged "the credibility of the defendants' experts' conclusions" by "giving the jury reasons to be skeptical of those experts' results"); *Alexander v. Take-Two Interactive Software, Inc.*, No. 18-cv-966, 2020 WL 5750033, at *3 (S.D. Ill. Sept. 26, 2020) (denying *Daubert* motion where expert "challeng[ed] the reliability of the opinions offered by an opposing expert"). And Ahern does not merely resolve factual disputes that could be resolved by a jury without the application of any expertise (the issue addressed by the cases cited by Zambrano[4])—he applies his financial and accounting expertise to critique the plausibility of Schwebke's assumptions, analysis, and opinions.

Second, Zambrano challenges the reliability of certain of Ahern's opinions. Zambrano contends that Ahern does not adequately explain how he determined Zambrano's expected profit margin or calculated the "adjustment factors" he applies to Schwebke's analysis. Zambrano also argues that Ahern engages in speculation about whether Zambrano would have to incur costs to be able to service all of Red Dot's added locations. But, reviewing Ahern's report, Ahern provides reasoned explanations for each opinion. [184-1] ¶¶ 60, 63–77, 93–119 & n.101. There is no basis to exclude Ahern's opinions on these grounds.

Third, Zambrano argues that many of the facts relied upon by Ahern or Ahern's conclusions are incorrect and that Ahern should have considered additional or different facts. As already addressed with respect to Schwebke, these issues are

---

[4] The Seventh Circuit summarized the primary case relied upon by Zambrano (*United States v. Benson*, 941 F.2d 598 (7th Cir. 1992), *as amended*, 957 F.2d 301 (7th Cir. 1992)), as barring expert testimony where the expert draws "inferences from evidence that [are] not based on any specialized knowledge or skill, and for which [the expert] ha[s] no greater qualification than the jury." *United States v. Vines*, 9 F.4th 500, 505 (7th Cir. 2021).

6

inappropriate for *Daubert* and are not a basis for exclusion of Ahern's testimony. *See Manpower*, 732 F.3d at 806; *Africano*, 2021 WL 4264237, at *4.

Finally, Zambrano also challenges many of Ahern's opinions as being unhelpful to the jury because Ahern's opinions purportedly do not rely upon Ahern's specialized knowledge or expertise. This argument is unpersuasive. As explained above, Ahern's opinions are based on his financial and accounting expertise and will therefore assist the jury in resolving this case.[5]

## CONCLUSION

For the reasons stated above, both *Daubert* motions are denied.

Dated: July 8, 2022 /s/ Martha M. Pacold

---

[5] Zambrano also argues in his opening brief that certain of Ahern's opinions should be excluded because they rely upon hearsay. This too is unpersuasive. *See* Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").

7